1   Cyrus M. Sanai, SB#150387
    SANAIS
2   433 North Camden Drive
    Suite 600
3   Beverly Hills, California, 90210
    Telephone: (310) 717-9840
4
    Counsel for Lary Kennedy and Greg Omotoy
5

6

7

8        UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA

9
    LARY KENNEDY, an individual, and GREG        ) Case No.  CV 09-07964 MMM (AGRx)
10  OMOTOY, an individual                        )
                                                 ) **FIRST AMENDED COMPLAINT  FOR:**
11                 Plaintiffs,                    )
                                                 ) (1) BREACH OF FIDUCIARY DUTY
12          vs.                                  ) (2) NEGLIGENCE
                                                 ) (3) FRAUD
13  FULL TILT POKER, an organization; CHRIS      ) (4)  RELIEF UNDER THE RACKETEER-
    FERGUSON, an individual; HOWARD              ) INFLUENCED CORRUPT
14  LEDERER, an individual; RAYMOND              ) ORGANIZATIONS ACT ("RICO"), 18 U.S.C.
    BITAR, an individual; PHILLIP GORDON, an     ) § 1964 ET SEQ;
15  individual; ANDY BLOCH, an individual;       ) (5)  RELIEF UNDER CALIFORNIA
    PHIL IVEY, an individual;, PERRY             ) BUSINESS AND PROFESSIONS CODE
16  FRIEDMAN, an individual; JOHN JUANDA,        ) SECTION 17200 ET SEQ.
    an individual; ERIK LINDGREN, an             ) (6) UNJUST ENRICHMENT
17  individual; Erik Seidel, an individual;      ) (7) LIBEL (LAW OF CALIFORNIA)
    MICHAEL MATUSOW, an individual;              ) (8) SLANDER (LAW OF CALIFORNIA)
18  ALLEN CUNNINGHAM, an individual; GUS         ) (9) LIBEL (LAW OF IRELAND)
    HANSEN, an individual; PATRIK                )
19  ANTONIUS, an individual; TILTWARE LLC,       )
    a California limited liablity company;       )
20  POCKET KINGS LTD, an Irish limited           )
    company; and DOES 1 through 10, inclusive,   )
21                                               ) JURY DEMAND
                   Defendants.                    )
22                                               )
    _____

23

24

25  Plaintiffs, Lary Kennedy and Greg Omotoy hereby allege as follows:

26

27

28
                                        -1-

## JURISDICTION

1.     This lawsuit was originally filed in the Los Angeles County Superior Court. Certain of the Defendants filed a notice of removal. The Court's jurisdiction is thus based on the grounds asserted in the notice of removal filed by the Defendants requesting removal. Plaintiffs do not admit or deny that such notice of removal was proper.

## THE PARTIES

2.     Plaintiff, LARY KENNEDY ("Kennedy"), is a poker player who resides in the County of Los Angeles, State of California. She plays for real money and for enjoyment of the game. Plaintiff, GREG OMOTOY ("Omotoy"), resides in the County of Los Angeles, State of California.

3.     Defendant CHRIS FERGUSON ("Ferguson") is, and at all relevant times hereto was, an individual residing in the County of Los Angeles, State of California.

4.     Defendant HOWARD LEDERER ("Lederer") is, and at all relevant times hereto was, an individual residing in the County of Clark, State of Nevada. Lederer was convicted of illegal bookmaking, i.e. sports wagering.

5.     Defendant RAYMOND BITAR ("Bitar") is, and at all relevant times hereto was, an individual residing in the County of Los Angeles, State of California.

6.     Defendant PHILLIP GORDON ("Gordon") is, and at all relevant times hereto was, an individual residing in the County of County of Clark, State of Nevada.

7.     Defendant ANDY BLOCH ("Block") is, and at all relevant times hereto was, an individual residing in the County of Clark, State of Nevada.

8.     Defendant PHIL IVEY ("Ivey") is, and at all relevant times hereto was, an individual residing in the County of Clark, State of Nevada.

9.     Defendant PERRY FRIEDMAN ("Friedman") is, and at all relevant times hereto was, an individual residing in the County of Los Angeles, State of California.

10.     Defendant JOHN JUANDA ("Juanda") is, and at all relevant times hereto was, an individual residing in the County of Los Angeles, State of California.

-2-

11.     Defendant ERIK LINDGREN ("Lindgren") is, and at all relevant times hereto was, an individual residing in the County of Clark, State of Nevada.

12.     Defendant ERIK SEIDEL ("Seidel") is, and at all relevant times hereto was, an individual residing in the County of Clark, State of Nevada.

13.     Defendant MICHAEL MATUSOW ("Matusow") is, and at all relevant times hereto was, an individual residing in the County of Clark, State of Nevada.

14.     Defendant ALLEN CUNNINGHAM ("Cunningham") is, and at all relevant times hereto was, an individual residing in the County of Clark, State of Nevada.

15.     Defendant GUS HANSEN ("Hansen") is, and at all relevant times hereto was, a citizen of the Kingdom of Denmark.

16.     Defendant PATRIK ANTONIUS ("Antonius") is, and at all relevant times hereto was, a citizen of the Republic of Finland.

17.     Defendant FULL TILT POKER ("Full Tilt") is an organization comprising multiple companies which developed software for an on-line poker room and robots to play in such rooms and operates an internet-based website called Full Tilt Poker at the URLs www.fulltiltpoker.com and www.fulltiltpoker.net.  It was founded by Ferguson, Lederer, Bitar, Gordon, Block, Ivey, and Friedman (the "Founder Defendants") in 2003.   Each of the Founder Defendants holds an interest in Full Tilt. Full Tilt originally comprised two companies under the common control of the Founder Defendants, Defendant TILTWARE, LLC, a California limited liability company with an address at 10866 Wilshire Blvd. 4th Floor, Los Angeles, CA 90024 ("Tiltware"), and Vert Enterprises, a company ostensibly located in St. Kitts and Nevis.  In fact Vert Enterprises had no independent existence from Tiltware, and was operated from Los Angeles, California for more than two years.  Lederer and Bitar were ostensibly the head of Tiltware, and Ferguson, though playing no public role, was a de facto if not de jure director and executive of Full Tilt.  Of the Founder Defendants, all but Lederer and Ivey have computer technology experience and all of them are professional or semi-professional poker players. Of the Founder Defendants, all but Bitar are held out to be part of "Team Full Tilt" or "Full Tilt Pros" who act as spokespersons and representatives of the business.

-3-

FIRST AMENDED COMPLAINT

18.     At some time after 2003 Defendants Lindgren, Seidel, Matusow, Cunningham, Hansen and Antonius acquired interests in Full Tilt and began exercising common control of Full Tilt with the Founder Defendants, all such Defendants being hereinafter referred to as the "Individual Defendants". The Full Tilt organization was expanded to include corporate entities in addition to Tiltware and Vert. The company which currently purports to operate the fulltiltpoker.com and fulltiltpoker.net websites is defendant POCKET KINGS LTD ("Pocket Kings"), which is based in the Republic of Ireland. Bitar is the controlling director of Pocket Kings Ltd. from his home in Glendora, California. The complete organizational rights and responsibilities are unwritten and exercised in common among the Individual Defendants, with Lederer taking the pre-eminent position and Bitar occupying many of the formal business positions and directorships. The Defendants deliberately obscure the actual legal entities which comprise Full Tilt at any time. For example, the Full Tilt website includes terms and conditions that purport to contractually bind a player with "Full Tilt Poker" with the following statement: "Please note that the Agreement constitutes a legally binding agreement between you and Full Tilt Poker (referred to herein as "FTP"), which owns and operates the Internet site found at www.FullTiltPoker.com (the "Site")." Nowhere in the terms and conditions, or indeed on the Full Tilt Website, is there any disclosure of the legal name, location, or jurisdiction of formation of "Full Tilt Poker", thus making it impossible for a person to know with whom the contract has been entered. As of the date of filing of this amended complaint, Defendants' counsel has refused, after repeated written inquiries, to identify the entity or entities which comprise "Full Tilt Poker" as set forth in the putative terms and conditions.

19.     Plaintiffs are informed and believe and on that basis allege that all Defendants knowingly and willfully conspired to conduct the actions alleged herein. Each Defendant did the acts and things herein alleged pursuant to, and in furtherance of, the conspiracy, or lent aid and encouragement to the conspiracy.

## COMMON ALLEGATIONS

20.     The Defendants own and operate, directly and indirectly, the websites fulltiltpoker.com and fulltiltpoker.net. These sites are ostensibly on-line poker rooms. An on-line

-4-

poker room is an Internet-based version of California cardrooms such as the Bicycle Casino and the Commerce Casino (both located in Los Angeles County).  At a cardroom players engage in poker and other cardgames against each other, and the owner of the cardroom has no stake in the outcome, instead charging a fee to play each hand.

21.     To play at Full Tilt, a person signs up for an account with Full Tilt online and sends money to a bank account, on-line payment system or credit card.  The person appears to other players as a two-dimensional "avatar" selected from a pool of stock images, and chooses a screen name.  There is no ostensibly "house" to play against; instead the Full Tilt takes a small amount from each pot won by a player, called "rake".  From a legal point of view, the owner of the cardroom acts as a fiduciary holding funds of the players which are accounted for by actual or virtual chips, facilitates the exchange of the markers designating player funds among the players, and then returns to the player on demand the player's account balance of the funds held in trust.  On-line cardrooms are not illegal in California and certain other American states, but unlicensed operation of a casino where the owner of the poker room makes or pays out wagers is illegal in every American state.

22.     Though Full Tilt represents that its business is not gambling and is a cardroom both statements are false.  Poker is considered a form of gambling in most American states, though some states, like California, treat it differently from other kinds of gambling.  Full Tilt has never been a cardroom because the house, that it is to say the Full Tilt business, regularly plays.  The presence of the Full Tilt "house" is manifested in at least two different ways.  First, the Individual Defendants and certain other professional poker players sponsored by Full Tilt will play on the site, utilizing the funds of Full Tilt as their stakes in the game.  Several of the Individual Players, for example Antonius, use multiple screen names and accounts on Full Tilt.  The appearances of the Individual Defendants and the other professionals are in some cases open to other players and in some cases not, however the fact that they play with Full Tilt's money is completely hidden to players.

23.     A second means by which Full Tilt takes a position in the games in which it operates are through "robots" which are computer programs that play poker by interacting with an

-5-

on-line poker room in a manner similar to a human being.  Ferguson and Bloch (graduates of UCLA and MIT respectively) created poker robots to play on Full Tilt's websites. The purpose of the robots were twofold:  first, they filled out virtual poker tables which were slow; second, the poker robots play a very consistent game and can beat unskilled or moderately skilled players, increasing the site's revenues.

24.     On-line poker players hate robots, because they play a boring, conservative and error-free game.  On-line players avoid those poker sites which allow or tolerate their customers to play via robots, and many consider it a form of cheating.

25.     The use of poker robots on Full Tilt created a customer relations problem, because players would complain about other account holders they suspected where robots or whose card play was dictated by robot programs.  The Individual Defendants therefore created a "zero-tolerance" policy toward robots and robot-assisted players that were reported by its customers.  Of course, most of the robots reported were Full Tilt's own, but the player accounts for Full Tilt's own robots could simply be shut down and a new one assigned to Full Tilt's robots in a minute.  In addition, certain players who repeatedly lost to a skilled player would start on-line jihads against the successful player, accusing that player of being a robot.  Full Tilt discovered over time that cancellation of real player accounts accused as being a "robot" was another profit center, as the player account money of the wrongly-accused player was confiscated.  While a portion of that money was handed out as bounties, thus incentivizing such false accusations. Full Tilt kept a significant proportion.

## FIRST CAUSE OF ACTION

## BREACH OF FIDUCiARY DUTY

(By Kennedy and Omotoy As Against the Individual Defendants, Full Tilt, Tiltware, Pocket Kings and Does 1 through 10, inclusive)

26.     Plaintiffs hereby incorporates by this reference paragraphs 1 through 25 as if set forth in full.

-6-

FIRST AMENDED COMPLAINT

27.     The legal relationship between an Internet cardroom and its players is inherently a fiduciary one.  The cardroom undertakes to hold money of the players, ensure that a fair game is played utilizing software that randomly makes card deals, distributes the money in accordance with outcomes of the play, and provides money to players on cashing out.  These are the functions of a trustee.  Consistent with the obligations of a fiduciary, Full Tilt (including without limitation Tiltware and Pocket Kings) and the Individual Defendants represent to the public in oral and written statements that player money deposited with Full Tilt is "safe", that the games are fair, and that Full Tilt will treat its players in accordance with the highest standards of care and sportsmanship.  Because the Individual Defendants own and control Full Tilt (including without limitation Tiltware and Pocket Kings) and make the representations to the public that Full Tilt's conduct is consistent with that of a fiduciary, each of the Individual Defendants bears a fiduciary duty to the players.

28.     The primary obligations of the Defendants as fiduciaries is to care for the player funds, correctly account for their movement, accurately take player rake, ensure that the software replicates random card playing shuffles and distribution, and return money earned by players.  Arbitrarily confiscating player funds is a violation of fiduciary duty.

29.     Kennedy is a poker player specializing in "heads up" play, which is poker played between two persons only.  She was aware of the statement made in the immediately preceding paragraph through some or all of the modes of communication specified above. She reasonably relied on these representations and sent money to Full Tilt to fund her player account and played on that site for many years.  Omotoy is a recreational player who eventually abandoned the game and then allowed Kennedy to utilize the remaining funds in the account to play.

30.     In November, 2007, a poker player whom Full Tilt (including without limitation Pocket Kings and Tiltware) has favored with his own personal virtual tables, "TheComplainer", accused Kennedy's avatar, "pokergirl_z", of being a "robot" in various on-line poker forums and discussion groups. "TheComplainer" player regularly compiled and distributed large lists of player accounts he contended were robots.

FIRST AMENDED COMPLAINT

31.    Kennedy has never used a robot or computer program to assist her play.  To prove her skill, she has even used webcams to broadcast images of her playing live online.

32.    The Individual Defendants and Full Tilt (including without limitation Pocket Kings and Tiltware) ignored this evidence and confiscated in excess of $80,000 in the Full Tilt accounts of Kennedy and/or Omotoy (whose account Kennedy utilized after Omotoy abandoned the game) on or about January of 2008.

33.    The arbitrary confiscation of Plaintiffs' funds proximately caused financial loss to Plaintiffs. It was done willful intent to deprive players of property rights, legal rights and money. The Defendants were each aware of, or recklessly indifferent to, the falsity of such oral statements each of them made or caused to be made.  This despicable conduct subjected Plaintiffs to cruel and unjust hardship in conscious disregard of Kennedy's rights, so as to justify an award of exemplary and punitive damages.

## SECOND CAUSE OF ACTION

### NEGLIGENCE

(By Kennedy and Omotoy As Against Full Tilt, Tiltware, Pocket Kings and Does 1 through 10, inclusive)

34.    Plaintiffs hereby incorporates by this reference paragraphs 1 through 25 and 29 through 32 as if set forth in full.

35.    The legal relationship between an Internet cardroom and its players establishes a duty of care from the cardroom to the players  The cardroom undertakes to hold money of the players, ensure that a fair game is played utilizing software that randomly makes card deals, distributes the money in accordance with outcomes of the play, and provides money to players on cashing out. Consistent with the obligations of a trustee, Full Tilt (including without limitation Tiltware and Pocket Kings) and the Individual Defendants represent to the public in oral and written statements that player money deposited with Full Tilt is "safe", that the games are fair, and that Full Tilt will treat its players in accordance with the highest standards of care and sportsmanship.

-8-

36.     The primary obligations of Full Tilt (including Tilitware and Pocket Kings) as is to care for the player funds, correctly account for their movement, accurately take player rake, ensure that the software replicates random card playing shuffles and distribution, and return money earned by players.

37.     The negligent confiscation of Plaintiffs' funds proximately caused financial loss to Plaintiffs.

### THIRD CAUSE OF ACTION

### FRAUD

(By Omotoy and Kennedy As Against Full Tilt, Tiltware, Pocket Kings, the Individual Defendants and Does 1 through 10, inclusive)

38.     Plaintiffs hereby incorporate, by this reference, paragraphs 1 through 25, and 27 through 28, inclusive, as if set forth in full.

39.     Full Tilt makes many representations about its site through various means.  Full Tilt communicates through text on its websites, through emails to its account holders, through print and television advertising, through use of the United States mails, through use of the interstate telephone system, through statements made in public and in the press by the Individual Defendants, Tiltware, and Pocket Kings, and through statements made by each of the Individual Defendants on their personal websites which are transmitted through the United States interstate telephone communication system.  These statements, made and repeated from 2004 to date, include without limitation, the following:

a.     Poker is a game of skill and is not deemed to be gambling under federal or state law.

b.     Full Tilt operates a cardroom where everyone plays for their own account, including the Individual Defendants.

c.     Full Tilt does not tolerate the operation of robots on its site.

d.     The money of players deposited and won on Full Tilt is safe and held on behalf of the players.

-9-

FIRST AMENDED COMPLAINT

e.    Full Tilt treats its customers fairly and consistently in accordance with the highest standards of the poker community.

40.    Just as important as what the Defendants tell their players is what they do not tell them. Defendants do not disclose numerous facts which they are under a duty to disclose, including without limitation:

a.    That player accounts are subject to arbitrary confiscation by Fullt Tilt at any time.

b.    That Full Tilt's operation of a cardroom is in violation of the laws of numerous states thus leaving players' funds subject to confiscation at any time.

c.    That Full Tilt has a material stake in the outcome of many hands because (a) the Individual Defendants when openly playing on the website are also owners, and (b) the Individual Defendants when playing under one of their anonymous accounts and the robot-played accounts utilize Full Tilt funds. These hidden actions render the provision of Full Tilt's services illegal in jurisdictions, like California, that do not prohibit Internet cardrooms.

d.    The current legal entity that owns and operates the full tilt website or that purports to bind players via standard terms and conditions. Indeed, the Defendants' counsel in this lawsuit under repeated questioning refuses to identify the legal name and jurisdiction of formation of the entity or entities which own and operate the fulltiltpoker.com and fulltiltpoker.net website.

41.    Each of the Individual Defendants has direct knowledge of the operations of Full Tilt, including without limitation its component companies, Tiltware and Pocket Kings. Each of the Individual Defendants, as well as executives in Full Tilt (including without limitation Tilware and Pockets Kings) is and was aware that the statements set forth in paragraph 39 were false when made and continue to be false, and such statements were made with the intent to induce potential players, including without limitation Kennedy and Omotoy, to play on the Full Tilt Poker website for real money. Each of the Defendants is and was aware of the facts which Full Tilt (including Tiltware and Pocket Kings) keeps hidden from players and declines to reveal to them notwithstanding its duty to do so, and is further aware that such concealment is necessary to continue to have players send money to them for play on the website.

FIRST AMENDED COMPLAINT

42.     Kennedy is a poker player specializing in "heads up" play, which is poker played between two persons only. She was aware of the statement made in the immediately preceding paragraph through some or all of the modes of communication specified above. She reasonably relied on these representations and sent money to Full Tilt to fund her player account and played on that site for many years.

43.     In November, 2007, a poker player whom Full Tilt (including without limitation Pocket Kings and Tiltware) has favored with his own personal virtual tables, "TheComplainer", accused Kennedy's avatar, "pokergirl_z", of being a "robot" in various on-line poker forums and discussion groups. "TheComplainer" player regularly compiled and distributed large lists of player accounts he contended were robots.

44.     Kennedy has never used a robot or computer program to assist her play. To prove her skill, she has even used webcams to broadcast images of her playing live online.

45.     The Individual Defendants and Full Tilt (including without limitation Pocket Kings and Tiltware) ignored this evidence and confiscated in excess of $80,000 in the Full Tilt accounts of Kennedy and/or Omotoy (whose account Kennedy utilized after Omotoy abandoned the game) on or about January of 2008. Virtually all of such funds were the property of Kennedy. After that time Full Tilt (including without limitation Pocket Kings and Tiltware) and the Individual Defendants have publicly stated that Kennedy's success as a player was due to her employing or being assisted by a poker robot.

46.     Plaintiffs' loss of funds was proximately caused by the fraudulent statements made by the Individual Defendants as spokesmen for Full Tilt (including without limitation Pocket Kings and Tiltware) and by Full Tilt's statements made by its constituent corporate entities (including without limitation Pocket Kings and Tiltware). Plaintiffs reasonably relied on such statements when setting up their accounts with Full Tilt, continuing to play on Full Tilt in the case of Kennedy, and not withdrawing the balance that was confiscated at the earliest opportunity. These statements proximately caused Plaintiffs' injury because had the defendants disclosed that Full Tilt would arbitrarily confiscate Plaintiffs' money on the flimsiest of accusations, Plaintiffs would not have opened an account on Full Tilt, played or Full Tilt, or allowed the account

-11-

balances to reach a high level. Had Full Tilt not made false representations about its practices, Kennedy in particular would not have devoted her time and energy playing on Full Tilt, and would instead of played on other sites which do not have this practice.

47.     The Individual Defendants and Full Tilt took the actions and made the statements set forth in paragraphs 27 through 32 with malice and/or willful intent to deprive players of property rights, legal rights and money.  The Individual Defendants were each aware of, or recklessly indifferent to, the falsity of such oral statements each of them made or caused to be made.  This despicable conduct subjected Kennedy to cruel and unjust hardship in conscious disregard of Kennedy's rights, so as to justify an award of exemplary and punitive damages.

## FOURTH CAUSE OF ACTION

### RELIEF UNDER THE RACKETEER-INFLUENCED CORRUPT ORGANIZATIONS ACT ("RICO"), 18 U.S.C. § 1964 ET SEQ;

(By Kennedy and Omotoy As Against the Individual Defendants, Tiltware, Pocket Kings and Does 1 through 10, inclusive)

48.     Plaintiffs hereby incorporates by this reference paragraphs 1 through 25, 27 through 28, and 39 through 45, as if set forth in full.

49.     The fraudulent statements described in paragraph 39 and the non-disclosures described in paragraph 40 each constituted a separate violation of 18 U.S.C. § 1343.  In aggregate those statements have been made and repeated by Pocket Kings and the Individual Defendants hundreds of times.  Each such statement has been made at least once through the Individual Defendants' use of the United States mail system, and at least once through the use of the United States interstate telephone communication system. In addition, the operation of the Full Tilt business, including the specific monetary transactions between and among Full Tilt, Pocket Kings, Kennedy and Omotoy, involved and involves use of the United States mail system, and at least once through the use of the United States interstate telephone communication system

50.     Each wagering transaction conducted by or against Ferguson, Juanda or Friedman on Full Tilt, each wagering transaction conducted against a player in California by any Individual

-12-

Defendant, each poker wager conducted by or against a Full Tilt robot, and each poker tournament or other prize paid out of the funds of Full Tilt to a player residing in California, constituted a violation of California Penal Code  § 330.  There have been many thousands of such violations by Full Tilt every year from 2004 onward.

51.     Full Tilt has conducted at least one Internet gambling transaction in violation of the law of Illinois, Indiana, Louisiana, Massachusetts, Nevada, Oregon, South Dakota, New Jersey, Nevada, Washington State, Missouri, Kentucky and Utah each year since 2004.   As of the date of this Complaint the state of Kentucky seeks to obtain control over Full Tilt's domain names for violation of Kentucky anti-gambling law, accusations that Full Tilt has declined to contest in the Kentucky state courts.  In addition the United States acting through the United States Attorney for the Southern District of New York has confiscated millions of dollars of funds dispatched by Full Tilt to its customers in the United States.

52.     Each of the actions identified in paragraphs 35 through 37 constitutes a "racketeering activity" under 18 U.S.C. § 1961(1), and in aggregate they constitute a "pattern of racketeering activity" under 18 U.S.C. § 1961(5).  Full Tilt is an "enterprise" under 18 U.S.C. §1961(4).  Each of the Individual Defendants maintains an interest in and controls Full Tilt through which they engage in the above referenced pattern of racketeering activity.  Each of the Individual Defendants participates in the conduct of Full Tilt's affairs through a pattern of racketeering activities. Each of Tiltware and Pocket Kings are corporate entities which comprise a part of, but not the whole, of the Full Tilt enterprise, and each is under the control of the Individual Defendants.

53.     Plaintiffs have been injured by the pattern of racketeering activities conducted by the Individual Defendants, Tiltware and Pocket Kings, who are jointly and severally liable to Plaintiffs for three times the amount of economic losses arising from the pattern of racketeering activities plus attorney's fees.  These include not only out of pocket losses but also the income Kennedy would otherwise have made playing in lawful poker venues.

54.     The Individual Defendants, Tiltware and Pocket Kings conducted the pattern of racketeering activity alleged above with malice and/or willful intent to deprive players, including

-13-

1    Plaintiffs, of property rights, legal rights and money. This despicable conduct subjected Plaintiffs

2    to cruel and unjust hardship in conscious disregard of Plaintiffs' rights, so as to justify an award of

3    exemplary and punitive damages.

4

5                              **FIFTH CAUSE OF ACTION**

6    **VIOLATION OF BUSINESS AND PROFESSION CODE SECTION 17200, *et seq.***

7    (By Kennedy As Against Full Tilt, Tiltware, Pocket Kings, the Individual Defendant, and Does 1-

8                                            10)

9        55.    Plaintiff Kennedy hereby incorporate by this reference paragraphs 1 through 25, 27

10    through 28, 39 through 45, and 49 through 53 inclusive, as if set forth in full.

11        56.    The conduct of the Individual Defendants and Full Tilt (including without

12    limitation Pocket Kings and Tiltware) was and will be unlawful business acts or practices because

13    they repetitively violated, *inter alia,* Penal Code §330, 18 U.S.C. § 1323, and 18 U.S.C. § 1962,

14    and in addition constituted deceptive advertising and unfair business practices.

15        57.    The conduct of the Individual Defendants and Full Tilt set forth above was and will

16    be a fraudulent business act or practice and deceptive or misleading advertisement because it was

17    likely to deceive members of the general public to induce them to play on Full Tilt's website and

18    send Full Tilt money.

19        58.    In engaging in conduct that constitutes unfair competition and false advertising, the

20    Individual Defendants and Full Tilt have acquired money or property from members of the general

21    public who reside in California, including Kennedy.

22        59.    It is impossible for Plaintiff Kennedy to determine the exact amount of money due

23    to the general public without a detailed review of the financial books and records of the Individual

24    Defendants and Full Tilt.  Accordingly, Plaintiff Kennedy seeks, among other things, an

25    accounting of the Individual Defendants and Full Tilt and/or the appointment of a receiver over

26    Full Tilt.

27

28
                                    -14-

60.     The aforementioned business practices of the Individual Defendants and Full Tilt are likely to continue and therefore will continue to violate the law and deceive the public.

61.     The Individual Defendants and Full Tilt should be enjoined from conducting illegal gambling enterprises in California and to California residents and should be required to restore all money taken from players in California, including Plaintiff Kennedy.

62.     The number of persons injured by the illegal conduct of the Individual Defendants is too numerous to effectively litigate on a case by case basis.  All of the persons injured by the violation of California law have sufficiently similar actions in fact and law as to merit a class action.  Kennedy is an appropriate representative a class comprising all citizens of California who have lost money playing on Full Tilt's website due to Full Tilt's false advertising and/or unfair business practices.

## SIXTH CAUSE OF ACTION

### UNJUST ENRICHMENT

(By Kennedy and Omotoy As Against Full Tilt, Tiltware, Pocket Kings and Does 1-10)

63.     Plaintiffs hereby incorporate by this reference paragraphs 1 through 25,  27 through 28,  and 39 through 45, inclusive, as if set forth in full.

64.     As an alternative to an award of damages, Plaintiffs are entitled to restitution of the amounts confiscated by Full Tilt plus prejudgment interest and any additional earning associated with some funds.

## SEVENTH CAUSE OF ACTION

### LIBEL (CA CIV. CODE §45, §45a)

(By Kennedy As Against Full Tilt and Does 1-10)

65.     Kennedy hereby incorporates by this reference paragraphs 1 through 25, and 27 through 28, and 39 through 45 inclusive, as if set forth in full.

-15-

**FIRST AMENDED COMPLAINT**

66.     Executives, employees, and representatives of Full Tilt (not for purposes of this cause of action Tiltware, Pocket Kings or any entity resident in California), including without limitation the Individual Defendants, stated in writing to players and the general public in numerous circumstances that Kennedy's account had been terminated due to her playing with or through a robot.  After this lawsuit was filed in the Los Angeles County Superior Court, Full Tilt altered its stance and released a statement in writing that Kennedy's account had been canceled and her money confiscated because she had committed unspecified wrongdoing.   In both cases, these were false statements made with knowledge of, or reckless disregard of, its truth or falsity and that a reasonable person would believe implied that Kennedy was dishonest and incapable of playing as well as she did.  Because Kennedy is a professional poker player, this statement is of the kind that was inherently injurious to her, allowing recovery of general damages.  These statements also proximately caused Kennedy to suffer embarrassment, humiliation, and emotional distress.

67.     Full Tilt made the statements alleged above with malice and/or willful intent to deprive Kennedy of property rights, legal rights and money and to oppress her. This despicable conduct subjected Plaintiffs to cruel and unjust hardship in conscious disregard of Kennedy's rights and with actual malice, so as to justify an award of exemplary and punitive damages.

## EIGHTH CAUSE OF ACTION

### SLANDER (CA CIV. CODE §46)

(By Kennedy As Against Full Tilt and Does 1-10)

68.     Kennedy hereby incorporates by this reference paragraphs 1 through 25, 27 through 28, and 39 through 45, inclusive, as if set forth in full.

69.     Executives, employees, and representatives of Full Tilt (not for purposes of this cause of action Tiltware, Pocket Kings or any entity resident in California) stated orally, and by mechanical or electronic means, to players and directly or indirectly to the general public in numerous circumstances that Kennedy's account had been terminated due to her playing with or

-16-

through a robot. After this lawsuit was filed, Full Tilt altered its stance and issued statements, orally, and by mechanical or electronic means, that Kennedy's account had been canceled and her money confiscated because she had committed unspecified wrongdoing. These were false statements made with knowledge of, or reckless disregard of, its truth or falsity.    Because Kennedy is a professional poker player, this statement tended to directly injure Kennedy in her profession by imputing to her general disqualification in those respects which her occupation peculiarly requires, and imputed that Kennedy was dishonest and incapable of playing as well as she did, which imputation has a natural tendency to lessen the profits of her profession. These statements also proximately caused Kennedy to suffer embarrassment, humiliation, and emotional distress.

70.    Full Tilt made the statements alleged above with malice and/or willful intent to deprive Kennedy of property rights, legal rights and money and to oppress her. This despicable conduct subjected Kennedy to cruel and unjust hardship in conscious disregard of Kennedy's rights and with actual malice, so as to justify an award of exemplary and punitive damages.

## NINTH CAUSE OF ACTION

### LIBEL (LAW OF IRELAND)

(By Kennedy As Against Pocket Kings and Does 1-10)

71.    Kennedy hereby incorporates by this reference paragraphs 1 through 25, 27 through 28 and 39 through 45, inclusive, as if set forth in full.

72.    Executives, employees, and representatives of Pocket Kings stated in writing, to players and directly or indirectly to the general public in numerous circumstances that Kennedy's account had been terminated due to her playing with or through a robot. After this lawsuit was filed, Full Tilt altered its stance and issued statements, orally, and by mechanical or electronic means, that Kennedy's account had been canceled and her money confiscated because she had committed committing unspecified wrongdoing.   These were  false statement made with knowledge of, or reckless disregard of, its truth or falsity   Because Kennedy is a professional

-17-

poker player, this statement tended to directly injure Kennedy in her profession by imputing to her general disqualification in those respects which her occupation peculiarly requires, and imputed that Kennedy was dishonest and incapable of playing as well as she did, which imputation has a natural tendency to lessen the profits of her profession. These statements also proximately caused Kennedy to suffer embarrassment, humiliation, and emotional distress.

73.     Pocket Kings made the statements alleged in the immediately preceding paragraph in the Republic of Ireland.

74.     Pocket Kings conducted the pattern of racketeering activity alleged above with malice and/or willful intent to deprive Kennedy of property rights, legal rights and money and to oppress her. This despicable conduct subjected Plaintiffs to cruel and unjust hardship in conscious disregard of Kennedy's rights and with actual malice, so as to justify an award of exemplary and punitive damages.

**WHEREFORE,** Plaintiffs Lary Kennedy and Greg Omotoy respectfully demands the following relief:

<u>On the First Cause of Action</u>

1.     Compensatory damages according to proof at trial;

2.     An award of punitive or exemplary damages;

3.     Reasonable costs incurred in this action;

<u>On the Second Cause of Action</u>

1.     Compensatory damages according to proof at trial;

2.     Reasonable costs incurred in this action;

<u>On the Third Cause of Action</u>

1.     Compensatory damages according to proof at trial;

2.     An award of punitive or exemplary damages;

3.     Reasonable costs incurred in this action;

<u>On the Fourth Cause of Action</u>

-18-

FIRST AMENDED COMPLAINT

1.   Compensatory damages according to proof at trial, tripled in accordance with 18 U.S.C. § 1964(c);

2.   An award of punitive or exemplary damages;

3.   Reasonable costs incurred in this action, including reasonable attorney fees pursuant to 18 U.S.C. § 1964(c);

### On the Fifth  Cause of Action

1.   For preliminary and permanent injunctive relief pursuant to Business & Professions Code Section 17203 and restraining and enjoining the Individual Defendants and Full Tilt from continuing the violations acts of illegal, unfair, or fraudulent competition or advertising set forth above and requiring the Individual Defendants and Full Tilt to take any acts needed to prevent further violations;

2.   For an order requiring the Individual Defendants and Full Tilt to provide an accounting of all moneys which they may have received from identifiable victims in California as a result of the acts and practices found to constitute unfair competition under Business and Professions Code Section 17200 *et seq.*;

3.   For an order that Full Tilt and the Individual Defendants make restitution by restoring to identifiable victims all funds acquired by the acts of unfair competition set forth above, including payments acquired by defendants from players on Full Tilt's website, and all additional orders necessary to accomplish this purpose, pursuant to Business and Professions Code Section 17203;

4.   Reasonable costs incurred in this action, including reasonable attorney fees pursuant to Code of Civil Procedure Section 1021.5 and/or as an equitable private attorney general and prejudgment interest;

### On the Sixth Cause of Action

1.   Restitution of all amounts confiscated by Full Tilt, in an amount according to proof.

2.   Reasonable costs incurred in this action;

### On the Seventh Cause of Action

-19-

FIRST AMENDED COMPLAINT

1.   As to Kennedy only, General Damages in an amount to be determined at trial;

2.   As to Kennedy only, an award of punitive or exemplary damages;

3.   Reasonable costs incurred in this action;

On the Eighth Cause of Action

1.   As to Kennedy only, General Damages in an amount to be determined at trial;

2.   As to Kennedy only, an award of punitive or exemplary damages;

3.   Reasonable costs incurred in this action;

On the Ninth Cause of Action

1.   As to Kennedy only, damages in an amount to be determined at trial;

2.   Reasonable costs incurred in this action, including reasonable attorney fees under the law;

As to All Causes of Action

1.   For costs of suit incurred herein;

2.   For such other and further relief as the Court deems just and proper.

Dated:  December 3, 2009

By: ____ /s _____
    CYRUS SANAI
    SANAIS
    Attorney for Plaintiffs

Plaintiffs demand a jury trial.

By: ____ /s _____
    CYRUS SANAI
    SANAIS
    Attorney for Plaintiffs

FIRST AMENDED COMPLAINT